**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| CARRIE L. WESTON, | § | |
|           Plaintiff, | § | |
| v. | § | No. 3:09-CV-2264-B (BH) |
| | § | |
| MICHAEL ASTRUE, Commissioner of | § | |
| the Social Security Administration, | § | |
|           Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order No. 3-251*, this case was automatically referred for proposed findings of fact and recommendation for disposition. Before the Court are *Plaintiff's Motion for Summary Judgment* (doc. 10), filed February 26, 2010, and *Commissioner's Motion for Summary Judgment* (doc. 11), filed March 26, 2010. Based on the relevant filings, evidence, and applicable law, the Court recommends that *Plaintiff's Motion for Summary Judgment* be **GRANTED**, *Commissioner's Motion for Summary Judgment* be **DENIED**, and the case be remanded to the Commissioner for further proceedings.

**I. BACKGROUND**[1]

**A. Procedural History**

Carrie Weston ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her claims for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423. On March 26, 2007, Plaintiff applied for benefits. (Tr. at 110-116.) She claimed that she had been disabled since August 1, 2005, due to fibromyalgia, back pain, bronchitis, genitourinary disorders, schizophrenia, depression, panic disorder, paranoia, anger, and attention deficit disorder. (Tr. at 60-61, 66, 71, 154, 364, 396.) The

---

[1] The background information comes from the transcript of the administrative proceedings, which is designated as "Tr."

Social Security Administration denied Plaintiff's application initially and upon reconsideration. (Tr. at 62-66, 68-71.) A hearing before an Administrative Law Judge ("ALJ") was held on September 29, 2008. (Tr. at 19-54.) In a written decision, the ALJ found Plaintiff not disabled. (*See* Tr. at 5-18.) The Appeals Council found no reason to review the ALJ's decision and denied Plaintiff's request for review. (Tr. at 1-4, 189-93.) Consequently, the ALJ's decision became the final decision of the Commissioner. (*Id.* at 1.) Plaintiff appealed the Commissioner's decision to this Court pursuant to 42 U.S.C. § 405(g) on November 25, 2009.

**B. Factual History**

    **1. Age, Education, and Work Experience**

Plaintiff was born in June 1960, and has a high school equivalency diploma. (*See* Tr. at 60-61, 110, 121.) Her past relevant work experience includes positions as an insurance clerk, hospital admitting clerk, counter attendant, and ticket agent. (Tr. at 44-45.)

    **2. Medical, Psychological, and Psychiatric Evidence**

Plaintiff's medical record shows that on October 17, 2003, Plaintiff received primary treatment from Dr. Craig Kneten for flu-like symptoms at All Saints Medical Associates. (Tr. at 356.) Treatment records reflect that she weighed one hundred and forty-four pounds at that time. (*Id.* at 356.) In February 2004, Dr. Kneten diagnosed Plaintiff with generalized anxiety and prescribed her Wellbutrin Sr, Xanax, and Buspar. (Tr. at 353.) Following her complaints of back pain, Dr. Kneten advised her to stretch and to continue taking her medications. (Tr. at 448.)

Beginning in April 2004, Plaintiff sought treatment from a psychiatrist, Dr. Raj. (Tr. at 399.) He noted that she suffered from depression, mood swings, anxiety and panic attacks, but found her concentration to be fair. (Tr. at 399-400.) The following month, he diagnosed her with a

generalized anxiety disorder. (Tr. at 401.)

In January 2005, Dr. Kneten diagnosed Plaintiff with right carpal tunnel syndrome. (Tr. at 342.) He noted that her physical therapy had failed, and she had continued to have hyperesthesia of the bilateral upper extremities. (Tr. at 341.) The following month, Dr. Kneten diagnosed Plaintiff with probable bilateral carpal tunnel syndrome, questionable left ulnar neuropathy, and fibromyalgia. (Tr. at 341.)

In April 2005, Plaintiff went to the Fibromyalgia and Fatigue Center, where she reported to Dr. Larry Sharp that she was experiencing pain in the right arm, numbness of the hands, and an inability to hold a steering wheel. (Tr. at 324.) Plaintiff also reported frequent swelling and tenderness under her arms. (Tr. at 325.) Dr. Sharp diagnosed her with chronic fatigue, myalgia and myositis. (Tr. at 318.) Diagnostic tests revealed a severe impairment in exercise capacity. (Tr. at 323.)

In October 2005, Dr. Jaime Castro diagnosed Plaintiff with exogenous Cushing's and noted that she was obese. (Tr. at 330-331.) In December 2005, Plaintiff visited a neurologist, Dr. Rebecca S. Shank, who found that Plaintiff had give-way weakness in all muscle groups and slightly pressured speech. (Tr. at 364-365.) Dr. Shank diagnosed Plaintiff with probable benign essential tremor, probable fibromyalgia, non-specific right upper extremity pain, and a history of mild disc disease. (*Id.* at 365.)

Treatment records from Dr. Sharp indicate that in April 2007, Plaintiff complained of hearing voices, pain in her neck and arms, migraine headaches, and pain in her hands and wrists. (Tr. at 460.) Dr. Sharp noted that she continued to be disabled. (Tr. at 459.) The following month a State Agency consultative examiner, Dr. Ella Williams, diagnosed Plaintiff with depression and a personality

3

disorder with borderline traits. (Tr. at 390-391, 458.) Dr. Williams also diagnosed her with psychosis NOS, but he felt she was exaggerating her symptoms. *Id.* After finding a GAF score of 50, Dr. Williams noted that the prognosis was guarded. *Id.* He opined that Plaintiff's symptoms did not clearly fit a major mental illness. *Id.*

In June 2007, Dr. Oscar Becerra noted that Plaintiff's symptoms were compatible with attention deficit disorder, and that her emotional disorder was the main barrier to her employment. (Tr. at 396.) That same month, Dr. Michele Chappuis, a state agency psychiatrist, performed a "Psychiatric Review Technique" on Plaintiff. (Tr. at 409.) Under the listings for somatoform disorder and a personality disorder, Dr. Chappuis found that Plaintiff had the medical impairments of inferred pain disorder and personality disorder even though she did not satisfy the diagnostic criteria required to meet these listings. (Tr. at 409, 415-16.) Regarding Plaintiff's mental residual functional capacity, Dr. Chappuis opined that she was markedly limited in her ability to understand, remember and carry out detailed instructions, and moderately limited in her ability to maintain attention and concentration for extended periods, perform within a schedule, complete a normal workday without interruption from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 423-424.) Dr. Chappuis also opined that Plaintiff was able to carry out routine 1-2 step tasks that do not require very rapid pace. (Tr. at 425.)

On October 30, 2007, Dr. Sharp reclassified Plaintiff as having a Class III disability, i.e., moderate impairment of the whole person. (Tr. at 466). He noted Plaintiff's weight to be 210 pounds and advised her to undergo an exercise program that involved walking and jogging over a 24 week period as a method to loose weight. (Tr. at 466-70.)

In July 2008, Plaintiff saw Dr. Karen Kirk with complaints of chronic neck and back pain. (Tr. at 514.) Her treatment records reflect diagnoses of back and neck pain, chronic obstructive pulmonary disease, depression, fibromyalgia, diabetes and panic disorder. (Tr. at 503-508.) Dr. Kirk advised Plaintiff to focus on active therapies to resolve her pain. (Tr. at 516.)

3. **Hearing Testimony**

At the hearing before the ALJ, Plaintiff appeared in person and through his attorney. (Tr. at 21.) Plaintiff, a vocational expert, a medical expert and a witness testified. (Tr. at 21-54.)

*a. Plaintiff's Testimony*

Plaintiff testified that she was often confused, paranoid and depressed; medications helped but did not eliminate her hallucinations. (Tr. at 24, 27.) She suffered from fibromyalgia, low back pain, headaches, panic attacks, and pain in her hands. (Tr. at 27-30.) She tried to work part-time for H & R Block but couldn't work more than one or two hours; she then had to spend the next day recovering. (Tr. at 32.) She could only sit in a chair ten to twenty minutes at a time, and then she needed to lay down for four to six hours. (Tr. at 33-34.)

*b. Witness Testimony*

Plaintiff's treating fibromyalgia specialist, Dr. Sharp, testified that he had treated Plaintiff since 2005 for chronic fatigue syndrome and fibromyalgia. (Tr. at 36.) He indicated that laboratory studies revealed poor cell function and symptoms consistent with the objective medical evidence. (Tr. at 52.) In addition, Dr. Sharp stated that an abnormal exercise test indicated that Plaintiff was class IV disabled. (Tr. at 52-53.) He opined that she could not sit up to six hours per day continuously and could not alternate between sitting and standing for up to six hours per day, but she could lift ten pounds on either an occasional or frequent basis. (Tr. at 51-52.) In addition, he

5

concluded that the most she could stand was ten minutes at a time with a total of no more than two hours in an eight hour day, and that fatigue would affect her ability to sustain employment. (Tr. at 37-38, 39.)

### c. *Medical Expert Testimony*

Dr. Eppstein, the medical expert witness, testified that Plaintiff had fibromyalgia and degenerative disease of the cervical and lumbar spines. (Tr. at 40.) She had a diagnostic history of asthma, diabetes, psychosis, depression, and borderline personality disorder. (Tr. at 41.) Plaintiff had several functional limitations in a work setting. (Tr. at 42.) Among those, she was limited to lifting ten pounds occasionally and frequently, standing and walking four hours in an eight hour day and sitting six hours in an eight hour day with the option to move about. (Tr. at 42.) She could not perform work that required fine dexterity of her fingers and hand or work that involved climbing of ropes, ladders, or scaffolds.

### d. *Vocational Expert Testimony*

Ms. Skinner, a vocational expert ("VE"), also testified at the hearing. (Tr. at 44-54.) She characterized Plaintiff's previous experience as an insurance clerk (skilled, sedentary); hospital admitting clerk (semi-skilled, sedentary ); fast food counter attendant (unskilled, light); and ticket agent (skilled, light). (Tr. at 44-55.) Ms. Skinner concluded that none of her past work could be performed, but that she could perform the jobs of surveillance system monitor and call out operator. (Tr. at 45-48.)

## ALJ's Findings

The ALJ denied Plaintiff's applications for benefits by written opinion issued on January 14, 2009. (Tr. at 10-18.) He found that Plaintiff had not engaged in substantial gainful activity since

August 1, 2005, the alleged date of onset of disability. (Tr. at 10.) He found that Plaintiff suffered from severe impairments, including fibromyalgia, mild cervical and lumbar degenerative disc disease, obesity, asthma, diabetes, benign essential tremor, depression, and personality disorder. (*Id.* at 10.) Despite those severe impairments, he found no impairment or combination of impairments that satisfied the criteria of any impairment listed in the social security regulations. (Tr. at 11.)

The ALJ further found that Plaintiff maintained the residual functional capacity ("RFC") to perform sedentary work where she was not required to stoop, crouch crawl, kneel, or climb stairs and ramps more than occasionally; climb scaffolds, ladders, and ropes; sit for more than 20 minutes at one time without the opportunity to stand in addition to a lunch and the normal legal breaks during the work day; handle or finger objects more than occasionally; work at unguarded heights or near unguarded hazardous mechanical equipment; understand, remember, and carry out more than detailed instructions; undergo exposure to excessive dust, fumes, or gases more than incidentally on a rare basis or to be exposed to extreme temperatures and high humidity. (Tr. at 11-12, ¶5.)

The ALJ found that Plaintiff was unable to perform any of her past relevant work, but that based on her age, education, work experience and RFC, she would be able to perform a significant number of jobs in the national economy. (Tr. at 17, ¶¶ 6, 8.) Accordingly, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act at any time from her alleged onset date through the date of his decision. (Tr. at 18, ¶9.)

## II. ANALYSIS

### A. Legal Standards

#### 1. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commis-

sioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

### 2. Disability Determination

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64. The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony*, 954 F.2d at 292.

The Commissioner utilizes a sequential five-step analysis to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to

        be disabled.

3.      An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4.      If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5.      If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at Step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B. Issues for Review**

Plaintiff presents the following issues for review:

(1)      the ALJ applied an improper legal standard to evaluate Plaintiff's severe impairments;

(2)      the ALJ failed to consider all of the functional limitations established in this

> record, including those which he found to be severe;
>
> (3) the ALJ failed to give proper weight to the opinion of the treating physician; and
>
> (4) the ALJ failed to establish the existence of other work Plaintiff can perform, in significant numbers, consistent with her age, education, training, prior work experience, and residual functional capacity

(P. Br. at 1-2.)

**C. Issue One: Severe Impairments**

Plaintiff contends that the ALJ erred in not properly considering all of her severe impairments at Step 2 of the evaluative process because the ALJ applied an improper standard of severity. (P. Br. at 12-13.) Specifically, Plaintiff alleges that the ALJ failed to find somatoform disorder, paranoia, and anxiety as severe impairments despite evidence in the record to support these findings. (P. Br. at 15-16).

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Fifth Circuit has held that a literal application of these regulations would be inconsistent with the Social Security Act because they include fewer conditions than indicated by the statute. *Stone v. Heckler*, 752 F.2d 1099, 1104-05 (5th Cir. 1985). Accordingly, in the Fifth Circuit, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Id*. at 1101. Additionally, the determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity." *Id*. at 1104.

To ensure that the regulatory standard for severity does not limit a claimant's rights, the Fifth Circuit held in *Stone* that it would assume that the "ALJ and Appeals Council have applied an

10

incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used." *Id.* at 1106; *accord Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *Eisenbach v. Apfel*, 2001 WL 1041806, at *6 (N.D. Tex. Aug. 29, 2001) (Boyle, Mag.). Notwithstanding this presumption, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986). Unless the correct standard of severity is used, the claim must be remanded to the Secretary for reconsideration. *Stone*, 752 F.2d at 1106.

Here, the ALJ stated that a "severe" impairment is "one that significantly limits an individual's ability to perform basic work activities." (Tr. at 11 (citing 20 C.F.R. § 404.1520(c)).) He further stated that "an impairment is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." *Id.* (citing 20 C.F.R. §§ 404.1521 and 416.921 and Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.) These statements are inconsistent with the *Stone* holding that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." 752 F.2d at 1104-05. Unlike the ALJ's standard, *Stone* provides no allowance for a minimal interference on a claimant's ability to work. While the difference between the two statements appears slight, it is clear that the ALJ's construction is not an express statement of the *Stone* standard. This difference, coupled with the ALJ's failure to cite *Stone* or a similar opinion, leads the Court to conclude that the ALJ applied an incorrect standard of severity.

The ALJ's narrative discussion supports this conclusion with respect to Plaintiff's alleged

11

mental impairments. The ALJ found that Plaintiff suffered from the severe mental impairments of depression and personality disorder, (Tr. at 10), but he did not find psychosis and inferred pain disorder as severe mental impairments despite evidence in the record that Plaintiff suffered from these medically determinable impairments. For example, Dr. Chappuis, the state agency physician, concluded that Plaintiff did not meet the diagnostic criteria for a paranoid disorder listing, but she opined that Plaintiff had psychosis, a medically determinable impairment. (Tr. at 411.) Similarly, despite her finding that Plaintiff had failed to meet the diagnostic criteria for a somatoform disorder listing, Dr. Chappuis opined that Plaintiff nevertheless suffered from inferred pain disorder, a medically determinable impairment. (Tr. at 415.) There was also some evidence as to how these impairments allegedly affected Plaintiff's ability to work. Dr. Chappuis opined that because of her mental impairments, Plaintiff was markedly limited in her ability to understand, remember and carry out detailed instructions, and moderately limited in her ability to maintain attention and concentration for extended periods of time, perform within a schedule, complete a normal workday without interruption from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 423-424.) Despite this evidence, the ALJ's opinion does not reflect any consideration of psychosis and inferred pain disorder as severe impairments. The ALJ therefore applied the incorrect standard of severity at Step 2.

 Generally, appeals from administrative agencies of a procedural error will not lead to a vacated judgment "unless the substantial rights of a party have been affected." *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam)). However, the ALJ's failure to apply the *Stone* standard is a legal error, not a procedural error. The Fifth Circuit left the lower courts no discretion to determine whether such an error is

harmless. Rather, the court mandated that "[u]nless the correct standard is used, the claim *must* be remanded to the Secretary for reconsideration." *Stone*, 752 F.2d at 1106 (emphasis added). Because the ALJ applied an incorrect standard of severity at step 2, remand is required. Since remand is required for a step 2 error, the Court does not consider the remaining issues for review.

### III. RECOMMENDATION

*Plaintiff's Motion for Summary Judgment* (doc. 10) should be **GRANTED**, the *Commissioner's Motion for Summary Judgment* (doc. 11) should be **DENIED**, and the decision of the Commissioner should be **REVERSED** and the case **REMANDED** for further proceedings.

**SO RECOMMENDED**, **on this 4th day of May, 2010.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

13